We tried a case against Boston Scientific, we tried it in the year 2000, on the claim construction adopted by the court. We won under the claim construction adopted by the court, and after trial, at BSC's urging, the district court narrowed its claim construction. Now, Boston acknowledges, I think it runs as a theme through its papers, that having sought that claim construction in the first place, it was too late for it to ask for the district court to change the claim construction after the verdict. And so it strives mightily to contend that that is not what happened. I think it's exactly what happened, and under the charge actually given to the jury, the evidence was more than sufficient, and I think Boston has actually never argued otherwise. I'd like to direct the court to three documents that I think makes out very clearly our point. The first document is in the joint appendix at page 619, and it is the claim construction brief filed by Boston, page 619, and it sets forth the claim construction that it proposed and that the district court adopted. The term undulating means rising and falling in waves, i.e., having at least a crest and a trough. Now, rising and falling in waves is a pretty fair dictionary definition of undulating. The reason that Boston narrowed it to say having at least a crest and a trough was because the preferred embodiment had undulating sections of only one wave, and it was critical that the claim construction that was proposed by Boston encompass the preferred embodiment or knew it could not possibly be the right claim construction. And so if you turn the page to 620, you see an illustration of the preferred embodiment, and the preferred embodiment was called an undulating longitudinal, but it basically was a straight section, undulating section, straight section, undulating section, straight section, and so on. Each of the undulating sections was one trough and one wave, one crest and one trough. Under standard dictionary definition, a wave is a trough and its associated crest. And Boston needed a claim construction in which when a single undulating section was called for by the claim, as it is in Claim 25, it just says one undulating section, that the claim construction covers the preferred embodiment. And so you read at the top of page A620, Boston the Brief, Figure 8 is the only illustration of the undulating feature of the described stent structure. It depicts the structure as including many waves, each of which has a crest and a trough. Each individual wave has a crest and a trough. And if you go down to the paragraph below, Boston then refers to the dependent claim 22, which describes undulating as being in the general form of a sine wave, and says this description of undulating is fully consistent with the requirement for each wave, each individual wave, to have a crest and a trough, because that is the essence of the sine wave shape. Now Judge Robinson accepted this as the claim construction, and she then, obviously legitimizing a crest and a trough as a wave. Now, she then asked the parties, under this claim construction, should I grant Boston summary judgment? And we responded, no. And I'd like you now, if you would, to look at our response, which appears at A2405 of the appendix, 2405. And now, confronting the infringement question under Boston's claim construction, and the claim construction Boston advocated for the first time, we explain why we think the near stent infringes. And on page 2405, we say, as illustrated below, each U-section in the near stent begins at a crest, the top of a structure, the highest part of a wave, citing Webster's, falls to a trough, and then rises again to a crest. So we were perfectly clearly explaining that our opposition to their summary judgment motion was that we would show the jury that the near stent, which has a shape that goes like this, rises to two crests and has a trough. And we were relying in part on the dictionary definition of crest, the highest point of a wave. And to continue our opposition, if you turn the page, on 2406 at the bottom, we pick up on Boston's discussion of the sine wave, and we say, like the preferred embodiment of the Fischel undulating sections... This is the beginning of the first full paragraph at the bottom of 2406, is that what you're saying? Yes, now, the first full paragraph at the bottom of 2406. Like the preferred embodiment of the Fischel undulating sections, the undulating sections of the near constitute a single complete wave, a full period of a sine wave. And we show the same illustration, we then show the jury, that you see in your briefs on appeal, showing how it was just the same sine wave, a different full cycle. They call it a cosine wave, you can do that too. But just as they said in Markman that a trough and a crest are the essence of a single sine wave, we said two crests and a trough are the essence of a single cosine wave, and both are undulating, they're exactly the same. And so we concluded, in the middle of page 3, the near stent literally infringes because it has an undulating section, a wave-like section that contains two crests and one trough. So, that was our position, and now I'd like to draw your attention to the court's ruling on summary judgment, which is in the volume 2 of the appendix, and it's at page 3532. And at page 3532, paragraph 4, the judge denies summary judgment to Boston. She says, given that the word undulating is used to describe different structures in different ways, and given the various ways the accused product has been broken down to match or not the semantics, the court finds fact questions. The court is saying, loud and clear, that under the claim construction that she has just adopted, rising and falling in waves, having at least a crest and a trough, court is his case that the undulating section of the near stent is mathematically identical to the preferred embodiment, has a trough and two crests, each rising to a peak, raised fact issues for the jury to resolve. They weren't antithetical to her claim construction. And if Boston, at this time, thought the claim construction was deficient because it didn't say that a crest has to have an arcing curve or a change of direction, this was the time for it to make a motion to clarify or change the claim construction, and if it had done so, we would have tried a case under a different claim construction. But it didn't. So we were squared to go to trial on our theory of the case under the claim construction with the blessing of the district court. We then tried exactly the case that you see in this letter and that you see in our brief on appeal. And Boston did not, at any time, object that our case was in any way improper under the claim construction. It did not seek to amend the claim construction. And when the charge was given, the jury was charged that undulating meant rising and falling in waves, having at least a crest and a trough, and then, without objection from Boston, the judge charged the jury with respect to the claim construction, and this is at 49-31 of the record, the meanings I give you should be interpreted by you in accordance with their normal dictionary definitions. Normal dictionary meanings, I'm sorry. So the court was telling the jury that it was perfectly fine to use the dictionary definition of crest, the highest point of a wave, to find infringement. And this was Boston's last clear chance to do something about the claim construction. If they objected to that, they should have said so. If they wanted a new construction of crest, they should have said so. None of this happened. And then we got a verdict, and we won. And after the verdict, after the verdict, Boston came back on Jamal, and it did not argue that the evidence was insufficient on the case that we tried under the instruction that was actually given to the jury. It argued that it asked the court as a matter of claim construction, as a matter of claim construction, it said so explicitly at 2432, that the charge that was given to the jury did not contain the meaning that the court meant to ascribe to the claim crest. And the court accepted this argument. And the court narrowed the claim construction after summary judgment, after trial. The court said that the parties that claimed construction had agreed, and this is on 6263, is her very brief opinion on this subject, the parties in the court agreed that the terms crest and trough define arcing curves, citing nothing in which we agreed to that, and ignoring entirely the summary judgment briefing and the trial in which we clearly didn't agree with that. She says the court did not include this language because neither party suggested it was necessary, but it was contemplated. And so she's basically saying, well, the charge doesn't say what I meant it to say because Boston didn't suggest that it should say what it wanted me to say, but I'm going to do it now. At trial, court has presented no evidence to suggest that the near stead has two arcing curves. Well, that wasn't the claim construction. And she's changed the claim construction, and this is like trial practice 101. You can't do that. Boston sought a claim construction. It got the claim construction it sought. It waived any right to change the claim construction after the jury was charged. And that's what it did. I think this court's Hewlett-Packard case says it best. Parties cannot reserve issues of claim construction for the stage of post-trial motions. When issues of claim construction have not been properly raised in connection with the jury instructions, it is improper for the district court to adopt a new or more detailed claim construction in connection with JAMAL. The question on JAMAL is, was substantial evidence offered in support of the verdict on the charge actually given? And on that issue, Boston has never said a word. This should be reversed, and the judgment should be reinstated. Let me say one sentence on the reverse doctrine of equivalence and sit down. There's a reverse doctrine of equivalence issue to resolve if the court reinstates the infringement verdict, which it should. The reverse doctrine is easy. It just demands a prompt reversal. I ask only that this court decide the issue. Boston wants a remand. The last remand took five years. It is an easy issue. I beg of the court to decide it now so we can bring this case forward. Thank you. Your Honor, may it please the court, Mr. Discant notably didn't tell you two things that I think are fundamental to our case on no literal infringement. First of all, I didn't tell you that it was very clear, and we have numerous citations at pages 19 to 28 of our red brief showing that Cordes understood that the claim construction, as articulated by the court, that crests and troughs meant curves, arching curves. In fact, what he didn't tell you was the very claim construction they had proposed assumed that. And if you look at page 19 of the red brief, we quote their proposed claim construction and it's crystal clear that they understood that troughs and crests were curves. The first time that we heard the word point instead of curve was at trial. Prior to that, and, Your Honor, from page 19 to 28, there's numerous citations, none of which has Cordes even addressed in its brief or challenged, except to just generally say, well, they're snippets. Well, they're not snippets. The point is that although they may not have agreed with the construction that the court gave, they agreed with our client, BSC, and the court on what it meant. They always knew that it meant a curve. I wonder about how unambiguous references to a curve in this setting really are. If you cut the sine wave off at the point at which the slope is zero on both sides, in other words, it's reached its top, but it's only just reached its top, it doesn't seem to me unreasonable to say that the portion leading up to and including the very top point, the point at which the slope is zero, would be part of an arc or curve. I think that's true, but what that misses is that, and I think Your Honor is looking at the cosine curve. The cosine curve in the context of the claim construction is simply a trough. It's not, just because they can do this mathematical argument, the point is, there is no rise and fall, there is no crest and trough. There's just a big trough. That's it. Importantly though, there's a trough which then leads to an increasingly flatter and flatter and flatter line until it reaches the point at which the line is exactly flat, which is the point at which you cut it off. My question to you is why isn't it fair to characterize that as a curve which is part of the crest, even though the crest is the final point of the curve, mathematically speaking? Well, it's not a crest in the sense of the claim construction, because there's no rising and falling having a crest and a trough. There's simply whether you call it rising or falling. But you've added to the notion of the curve, the arc, a further notion, or at least I think it's argued that it's a further notion, that there must be a falling portion beyond the place at which the slope is zero. Right? Not necessarily, but I think the court's construction was in waves, rising and falling in waves, and it's clear that that meant that there had to be a curved shape that went up and a curved shape that fell. Yeah, but that's really, that's the $64 question. Does there have to be a curved shape on either of the wings of this device which falls? And I'm having a hard time seeing in either the language, the claim language, or in the constructions, that that's necessarily required. The other point I want to make, though, Your Honor, is that they're experts only indication as to what the actual structure was, where the endpoints were for the undulating section, wouldn't even include any of that curved portion because it was simply in the midpoint of the structure, not even up at the point where Your Honor's talking about. And that was the only thing they gave to the jury. When he went, and furthermore, they made very clear in the testimony that what they were giving to the, what they were telling the jury was, the crest is the point. They never said to the jury, the crest is the curve. Dr. Buller always used the term point or U. And he said, top of the U. Always point. The first time they ever used that word point was at trial. This letter that they say, well, you know, it showed they didn't agree with the claim construction. Well, the letter says they agree with the claim construction. More importantly, that point, that only came up at trial. So what I'm saying is that the articulation of what, when the jury had to understand, okay, what is the structure that will infringe Claim 25? And also, I should say, infringe Claim 26, these so-called zigzag elements. They drew a picture that I believe is on page 11 of the blue brief. And they colored in the zigzag elements in one color and they colored in the U-shaped member in another. That U-shaped member is not what Your Honor was asking about. A cosine with a lot of curve. And in fact, when they, when the expert then told the jury, okay, these are the zigzag elements. They're not part of the undulating connector. This is the undulating curve. The longitudinal. And here are the endpoints of it. And the endpoints are shown at page 35 of our brief. That's where their expert put them. All you had between them, not a second little shoulder curve, but just to connect those dots, the only way to connect them is with a smooth U-shaped or maybe V-shaped to some extent. So there is only a trough there, or a crest, as you will. But there's no second thing. What Your Honor is really asking about is something that was not argued to the jury. Because every time the jury heard crest, they heard point. And when the jury was told here were the endpoints, here's where this thing ends, it didn't go up to where Your Honor said. So what the judge concluded was their attempt was to go back to the claim construction they had lost on. They wanted a claim construction that said one curve. Crest or a trough? We wanted one that said two. Trough and crest. The court went our way. At that point, they understood that they didn't have an infringement case. They could have done three things. Two proper. They could have dropped the case, or they could have appealed the claim construction. They didn't do either of those. What they did was tell the court, okay, we understand your claim construction. But what they argued to the jury was wrong. They confused the jury because what they argued to the jury was this is a point. A crest can be a point. When they knew that from their own construction, which I showed you on page 19, they had said a wavy, curving outline is undulating and can include curves in the form of a wave-like crest, as well as curves in the form of a crest with its associated trough. So they knew that's what these terms meant. Now, they say, oh, this is irrelevant. This was a claim construction that we didn't get. But it is relevant because the only issue between the parties was crest and trough or crest or trough. That was it. And they were in agreement as to what it was. Now, the other thing, Your Honor, is at trial, they don't deny this either, what they actually argued to the jury was that crest was a point. Crest was a point. This was incorrect, but they argued it. And they did succeed in what they attempted to do. They confused the jury. And as a result, they got what they wanted, but in effect, they didn't get what they wanted. Now, they say we didn't object. That's not correct. At the end of their case, the Boston Scientific Attorney stood up and moved for JMOL under Rule 50A. And he told them and he told the court that their evidence doesn't meet the claim construction. He put them on notice, as you are supposed to do under 50A. And they then had a chance to go back and try to prove that there was a curve. Try to do all the things that the appellant's blue brief does improperly. They, after the fact, attempt to make some of the arguments that Your Honor was making by drawing in curves and red and things. They never did that at the trial or during the trial or after the trial. All they did was argue that crest was a point. All these other arguments came in this appeal. Mr. Borselli, did Boston Scientific object to the jury instructions? Was there any objection to the jury instructions at any time? No, because our position is that jury instruction was fine and in any event, the judge said it was fine and we agreed. The judge ruled on JMOL. We didn't have to do anything with that construction. That was fine. Wasn't it narrowed, though, after the original plan of construction? No, it was not. That's their argument. I know it's their argument. Was it, in fact, narrowed? No. Number one, arcing curves are implicit in rising and falling in waves, thus having a trough and a crest. Shown by their own acknowledgement of that repeatedly before the Markman. Single crest or single trough? We wanted both. They just wanted single crest or single trough. That was the only issue dividing the parties. Everybody was in agreement. So we didn't read anything in. The court didn't read anything into that. And that was the critical thing. Are these things curves? Yes. And the jury would have so understood if the appellant during the trial had not attempted to confuse it by putting in evidence that the crest here was a point. They either had to put in evidence showing the crest was a curve or not. And they can't now come back and say, well, you know, the jury could have done anything. When you intentionally mislead a jury, you have to assume that you were successful when the result is what you wanted. And so that's what Judge Robinson discovered and found afterwards. Now they say, oh well, summary judgment should preclude the court from doing this. If every time a federal district judge denied summary judgment, that meant it couldn't reach JMAL. You know, we would essentially gut Rule 50. Of course we all know that district judges don't often have the time to put the effort into a full understanding of the issue on summary judgment. Sometimes they do. This was close to trial. You read the judge's denial and it essentially says, well, the word undulating appears in many different claims, many different contexts. So I think there are genuine issues of material fact. The court said that, not having been educated by the trial, the testimony, and not at trial they really were arguing. Once she understood that, and once we made our Rule 50A motion, she was entirely appropriate in letting it go to the jury and then taking it away from the jury afterwards under 50B. That is the recommended practice in the revised notes to Rule 50. So she acted properly and there's nothing that she read into that claim. So the bottom line is literal infringement should be affirmed on inequitable conduct. I think we've made different arguments, but I think there's one very simple argument on inequitable conduct that will dispose of this case on that issue. This is a 13-year-old case, and what might have been a good idea to do five years ago or so forth may not be a good idea now. But this court has, and everyone understands a judgment of unenforceability of the 312. And that judgment was never appealed. What does that particular judgment matter in the context of this case? There's an illusion in the briefs as to whether it matters or not. Why? Because, first of all, it's settled now that the 312 patent Let's assume for a moment that you're not going to be able to persuade us that there's collateral estoppel from that judgment. But setting aside collateral estoppel, is there any significance to the 312 judgment? Yeah, I mean, it's evidentiary evidence that it's inequitable conduct. To the judgment, never mind the evidence. In other words, the trial judge went back and revisited the question of intent. So, you know, we have a new judgment on that. What is the judgment that was entered and previously not appealed on the 312? We believe it's collateral estoppel in the third circuit. So, indulge me. Is there any significance other than your collateral estoppel? As I say, it's pretty good evidence you have an adjudication. Well, it's relevant to future products. If anyone might assert it. But more importantly... There's nothing looming here as to which this is anything more than a potential, who knows, in the future we may want to   It's evidence obtained from the trial. It's evidence obtained from the trial. It's evidence obtained. That's why. And under the Taint rules, we say there was clearly a close enough relationship for Taint, and therefore there had to be a cure. In our position, this Court did remand to look into Taint and cure to have the Court flesh it out a little bit more. But one of the arguments we've made, and this is the one I just wanted to focus on and remand this, is this. The Taint is, and not resolved by the cure, the Taint was failure to disclose a reference that had undulating longitudinals. The Taint is not cured by simply giving the Patent Office the reference, among many references, in a continuation. As a matter of law, there had to be something more. We're talking cure, not just simply doing it over again later, which you could have done to begin with. Cure means there was a wrong, and you have to do something. Our position is, in this case, as a matter of law, cure had to be at least telling the examiner Hillstead shows longitudinals. And Your Honor's opinion reinforced that because it remanded to consider that point in the context of something else. The applicant's characterization of the prior art in the 312. He said not only the reference the examiner is relying on, but no prior art known to me has that specific  Therefore, cure had to go beyond IDS slipping in. Thank you, Your Honor. Thank you, Mr. Porcelli and Mr. Diskett. We have a couple of minutes for rebuttal, but we gave Mr. Porcelli a couple of extra minutes, so if you need four minutes. Thank you, Judge Price. On the first question, I think what you heard was a lot of jury arguments that could have been presented to the jury by Boston, which rejected them. They made their arguments to the jury about there was no crest because it had to go up and down, and the jury either simply rejected them because the crest doesn't have to go up and down, or it looked at the embodiment before them and said, oh, if it has to go up and down, it does. We don't know, but we have to look at the judgment in the light most favorable to the verdict winner. That's us. And there's simply no excuse for Boston not raising this issue prior to Jamal. I heard counsel say no one ever heard the word point, the highest point of a curve, until trial. I can't answer that one way or the other. I know our letter of September 12 on summary judgment at 24.05 says a crest is the top of a structure, the highest part of a wave, making exactly the same point. The word point doesn't show up here, but I don't attribute any significance to it one way or the other. We made it perfectly clear prior to trial that our infringement case was based on the near stent having a trough that rose to two crests, and the fault was Boston's. If Boston didn't, after summary judgment, go back to the judge and say, we fear the claim construction isn't what we thought it should have been, we'd ask you to revise it to say a crest must be an arcing curve. They didn't do that. Then we had the trial, and counsel says this is the first time they heard. I can't believe that could possibly be true in light of the summary judgment briefing, but in any event, they were at trial. They heard. They heard us say that the crest is the highest point of a curve. They knew the judge was going to instruct the jury to use dictionary definitions. Crest is the highest point of a curve. That's the dictionary definition. This was the time before the jury went out to ask for a change in the claim construction. They didn't do that. They did nothing until we had won the case, they came back on Jamal, and then asked the judge to change the claim construction, and she did. She set aside the verdict, not using the words of the claim construction, not using the evidence that we presented at trial, but adding a new nonstandard definition of crest, an arcing curve, not required under the claim construction, and that was wrong, and the verdict was improperly set aside. On inequitable conduct, I'll be brief, unless the court has questions. The court remanded to the district court. The court took a look at the questions on which the remand were directed, which was, was there in fact more detail on intent to deceive and more detail on taint? She took a look at it. She considered it in part, in light of intervening case law, I think most notably star scientific. She concluded that her decisions were incorrect. She reversed herself, rather than face reversal by this court, and I think that was perfectly appropriate, and her judgments with respect to inequitable conduct should be affirmed. What about the question of 312, and in particular the district court's freedom to revisit that issue, notwithstanding there wasn't at least an explicit remand reopening that issue from this court? Let me see if, I think there are two questions embedded there, but I'm not sure you're meaning to ask both. The first question is, did the district court have the power under the court's remand to consider its findings on 312 with respect to intent to deceive? Not just the findings, but the ruling. Let me start with that. The findings were expressed expressly before the court. That was the predicate for the taint issue. That's clearly the question. The question is, did she have the power to reverse her ruling that the 312 was procured by inequitable conduct? And that, I said you had two issues. I thought that was the one you were, in fact, interested in. Under Third Circuit law,  address issues that are fairly embraced within the scope of a remand. So, I think     inequitable conduct? And that, I said you had two issues. The first question is, did she have the power to reverse her ruling that the 312 was procured by inequitable conduct? And that,  I said you had an implicit empowerment of the district court with respect to the 312 that flowed from the remand on the 370 which depended on a present finding of fact that would be fatal to the previous ruling on the 312 if it were found in your favor. Thank you. Was there any practical significance to the 312? I don't believe there is. I mean, I think, well, let me say this. I think Dr. Fischel may be sitting in the courtroom somewhere and he would probably like to have his name untarnished. So, I think having one of his patents found to be procured by inequitable conduct would undoubtedly bother him for the rest of his life. So, yeah, I think there's that practical impact. In terms of litigation, there's no litigation pending with respect to it. It's obviously been under a cloud ever since Judge Robinson's original ruling, and I don't know of any litigation that's contemplated with respect to it. Thank you.